[No. 2538]

R. G. WILLIAMS, APPELLANT, *v.* AGNES B. COR-
DINGLY, JOSEPH D. CORDINGLY, ELLEN
HENNESSY, HENNESSY DIVIDE MINING
COMPANY (A CORPORATION), NEVADA FIRST
NATIONAL BANK OF TONOPAH (A CORPO-
RATION), JOHN DOE, AND RICHARD ROE,
RESPONDENTS.   [213 Pac. 105]

1. DESCENT AND DISTRIBUTION—HEIRS OF DECEASED INTESTATE,
LOCATOR OF UNPATENTED MINING CLAIMS, TAKE ONLY INTEREST
POSSESSED BY ANCESTOR.

    The estate or property of a locator of unpatented mining
claims, dying intestate, descends to his heirs, the same as
any other real property or interest therein, such heirs taking
precisely the same interest in the property as the ancestor
had, and have no greater or better claim than he had.

2. MINES AND MINERALS—ONE WHO ENTERED INTO A GRUBSTAKE
CONTRACT WITH ANOTHER NOT IN WRITING HELD ENTITLED TO
SHARE OF MINING CLAIMS LOCATED BY THE OTHER, TO WHICH
HEIRS OF OTHER TOOK SUBJECT.

    Though Stats. 1907, c. 174 (Rev. Laws, 2475), provides that
grubstake contracts are void, except as between the parties
thereto, unless recorded, and that they shall be acknowledged,
and that, when acknowledged and recorded, they shall be
prima facie evidence in all courts, in cases where mining
claims are in dispute, one who entered into such contract, not
in writing, with another, who subsequently located three
mining claims, had an undivided one-half interest therein, to
which the heirs of the locator deceased intestate took subject.

APPEAL from the Fifth Judicial District Court, Nye
County; *Mark R. Averill,* Judge.

Suit by R. G. Williams against Agnes B. Cordingly
and others. From a judgment for defendants and an
order denying a new trial, plaintiff appeals. **Remanded
with directions.**

*Wm. Forman* and *Wm. McKnight,* for Appellant:

The statute has no application to this case, because
the parties to the contract and the parties to the action
are, in the sense of the statute, the same. Being binding
upon Hennessy, it is equally binding upon his heirs.
Griffin v. Wertz, 2 Ill. App. 487; Williams v. Jones, 95
N. C. 504; Mayer v. Myers, 129 Ind. 366, 27 N. E. 740;

Strough v. Wilder, 119 N. Y. 530, 23 N. E. 1057, 7 L. R. A. 555.

Respondents herein occupy the place of Hennessy, take precisely the same interest he had and subject to the same conditions and equities, and are estopped, as he was, to deny the validity of the contract with Williams. 9 R. C. L. 87, 88.

The words "the same parties" include their heirs. Dishong v. Finkbiner, 46 Fed. 12, 17; Britton v. Thornton, 112 U. S. 535, 5 Sup. Ct. 291, 28 L. Ed. 816, 819; Briggs v. Briggs, 80 Cal. 253, 22 Pac. 335.

This court has clearly recognized the distinction between mere grubstake and prospecting agreements and joint mining adventures. Costello v. Scott, 30 Nev. 43, 72, 93 Pac. 1, 94 Pac. 222; Botsford v. Van Riper, 33 Nev. 191, 110 Pac. 710; Hornsilver Cases, 35 Nev. 447, 456, 130 Pac. 760, 134 Pac. 448; Lind v. Webber, 36 Nev. 623, 134 Pac. 461, 135 Pac. 139, 141 Pac. 458; Ann. Cas. 1916A, 1202, 50 L. R. A. (N.S.) 1046; Miller v. Walser, 42 Nev. 497, 513, 181 Pac. 497.

Property acquired in joint adventure with the profits thereof, where one party holds title, is the property of his associates, and he holds their proportionate shares as trustee for them. Botsford v. Van Riper, supra; Lind v. Weber, supra. And the property may be traced into whosesoever possession it comes, except that of a bona-fide purchaser without notice. Lind v. Weber, supra.

The defense of the statute must in some manner be claimed or insisted upon; it cannot be invoked by the court of its own motion. 10 Stand. Proc. 78; Chicago Attachment Co. v. Davis Co., 142 Ill. 171, 31 N. E. 438; 15 L. R. A. 754.

*Cooke, French & Stoddard* and *W. D. Hatton,* for Respondents:

The Nevada statute making grubstake contracts void except between the parties thereto excludes every person who is not a party to that contract. Heirs of a

party to a contract are no more parties to the contract than subsequent purchasers, encumbrancers, etc. Griffin v. Wertz, 2 Ill. App. 487, cited by counsel, is not in point; because that case merely involved the validity of an unrecorded mortgage asserted against administrator of mortgagor. Under the Illinois statute such mortgage was valid as between the parties, but not valid as to third persons, and the court further held that mortgagor's administrator was not a "third person." But the Nevada statute (Rev. Laws, 2474) makes an unrecorded grubstake contract "void and of no effect except between the parties to the contract." Mayer v. Myers, 27 N. E. 740, is also not in point. Authorities discussing the law applicable to "third parties" are wholly inapplicable here, because it is not "third parties" who are the only ones excepted from the operation of an oral grubstake contract, but it is all persons whomsoever who are not parties to the contract.

In Costello v. Scott, 30 Nev. 43, at p. 72, 93 Pac. 1, the court expressly held that, unless the agreement goes beyond the mere furnishing of supplies in consideration of a participation in the discoveries, the word "partnership" is improperly used and misleading—that a grubstake contract is simply a common venture wherein one furnishes the grub and the other the labor, and all discoveries inure to the benefit of the parties in the proportion fixed by the agreement; but where the venture goes further, and contemplates the working and developing of mines or a general mining business, it is more than a grubstake contract, and constitutes a partnership. Tested by this rule, there was no partnership, but a mere grubstake agreement.

A resulting trust, properly shown as growing out of a joint adventure, is operative as against the heir, yet the heir is not a party to the contract in dispute. "The plaintiff is not a party to the contract in dispute, and the contract is not binding upon him personally; but the legal title to the lots devolved upon him by descent, and is subject to the same trust while held by him that

it was subject to while held by his father." Irvine v. Campbell (Minn.), Ann. Cas. 1914c, 689, 691. In the case at bar the heirs were not parties to the alleged grubstake contract, and, further, the contract is void for not being in writing and recorded. Therefore there can be no resulting trust to which the interest of the heirs might be subjected.

By the Court, SANDERS, J.:

The merit of this appeal from a judgment and an order denying a new trial turns upon whether a statute passed in 1907 (Stats. 1907, p. 370; Rev. Laws, 2475) defeats plaintiff's right to recover. The statute reads as follows:

"SECTION 1. All grubstake contracts and prospecting agreements hereafter entered into, and which may in any way affect the title of mining locations, or other locations under the mining laws of this state, shall be void and of no effect, except between the parties to said contract or agreement, unless the instrument shall first have been recorded in the office of the county recorder of the county in which said instrument is made. The instrument or instruments shall be duly acknowledged before a notary public or other person competent to take acknowledgments. Grubstake contracts and prospecting agreements, duly acknowledged and recorded as provided for in this act, shall be prima-facie evidence in all courts of justice in this state in all cases wherein the title to mining locations and other locations under the mining laws of this state are in dispute."

The assignments of error do not assail the section, but it is specified that, if the section is applicable at all, the case at bar falls squarely within its exception, namely, " * * * except between the parties to said contract or agreement. * * * " This position necessitates a review of the case.

The action was brought to obtain judgment and decree adjudging and decreeing plaintiff to be the owner of 250,000 shares of the capital stock of the Hennessy

Divide Mining Company, a corporation, issued to the defendants in consideration of the sale and conveyance by them to said corporation of three lode mining claims, situate in the Gold Mountain mining district, Esmeralda County, designated as the St. Patrick, St. Ignatius, and Elberta lode mining claims.    The Hennessy Divide Mining Company and the Nevada First National Bank of Tonopah are made parties defendant, because of the injunctive relief demanded against them.    The prayer for relief was that said stock be impressed with a trust in favor of the plaintiff, that he be adjudged to be the owner thereof, and that defendants and their privies be required to deliver said stock to plaintiff.

Among others, the court found the facts to be as follows:

"That in the year 1910, the plaintiff and one Richard Hennessy entered into an arrangement for the location of three certain mining claims on January 1, 1911, in the Tonopah Gold Mountain mining district, now commonly known as Tonopah Divide mining district, in Esmeralda County, Nevada, for the joint and equal benefit of the plaintiff and said Richard Hennessy; that, pursuant to said arrangement, the said Richard Hennessy entered upon the public domain in said mining district and thereupon discovered, located, and acquired, in the name of the said Richard Hennessy, those certain lode mining locations commonly known and designated as St. Patrick, St. Ignatius, and Elberta, a contiguous group lying adjacent to that certain group of quartz mining locations, now commonly known and designated as the 'High Divide Group.' "

It is admitted that Richard Hennessy, the party referred to in this finding, died intestate in Nye County on or about the 7th day of December, 1911, and that R. G. Williams, also referred to therein, the plaintiff herein, at all times after the death of said Richard Hennessy, up to the year 1918, inclusive, except for the year 1912, represented said mining claims at his own cost and expense as required by the state and federal

laws, of which the defendants had knowledge. The said Richard Hennessy left surviving him as his heirs at law and next of kin the defendants Agnes B. Cordingly, a half-sister, Joseph D. Cordingly, a half-brother, and Ellen Hennessy, a sister, who, at the time of the death of said Richard Hennessy, and on the date of the contract entered into by him with the plaintiff in the year 1910, resided in a foreign state. On or about the 10th day of September, 1918, when said mining claims became marketable, Agnes B. Cordingly petitioned for letters of administration upon the estate of said Richard Hennessy in the district court of Nye County, and on September 21, 1918, letters were issued, and she thereupon qualified and entered upon her duties as administratrix of said estate. January 1, 1919, said administratrix petitioned for a partial distribution of the estate, including said three mining claims. February 1, 1919, responsive to her said petition, a decree of partial distribution was made and entered in the matter of said estate, in which said decree the said three mining claims were distributed to said three heirs of Richard Hennessy, deceased, the defendants herein. Thereafter said heirs and distributees sold and conveyed their right, title, and interest in said mining claims to the said Hennessy Divide Mining Company for the consideration of 500,000 shares of its capital stock, which was thereupon issued to them, subject to the terms and conditions of a pooling agreement whereby said stock was deposited with said Nevada First National Bank of Tonopah in escrow or in pool.

Upon these facts, and after an extended hearing without a jury, the court decided that plaintiff had an interest in the stock in controversy, and ascertained that interest to be 189,281 shares of such stock; but it was of the opinion that, because the contract between the plaintiff and Richard Hennessy was a grubstake contract, not in writing, and that the defendants, as heirs of Richard Hennessy, were not parties thereto, under the statute above quoted, the plaintiff could not

recover, and rendered judgment for the defendants. The judgment is demonstrably wrong.

1.   That unpatented mining claims are property is not questioned. That the estate or property of a locator of such claims, dying intestate, descends to his heirs, the same as any other real property or interest therein, is well settled, and no rule is better established than that heirs occupy the place of the ancestor. They take precisely the same interest in the property which the ancestor had, and have no greater or better claim than he had. 9 Ruling Case Law, sec. 83, p. 87.

2.   Plaintiff, under his contract with the deceased, had an undivided half interest in said mining claims, located by the deceased. Plaintiff and the deceased, in virtue of their contract, had held the ground as tenants in common. On the death of Hennessy, his heirs succeeded to no other nor greater rights in the property than those possessed by their ancestor. They took subject to the right of plaintiff under the contract existing unimpaired between plaintiff and the deceased at the time of his death. The contract, on the death of Hennessy, became equally as binding on defendants as upon him; and in this action defendants had no better nor greater right to disavow their ancestor's contract than he himself would have had. Their conversion of the property acquired as heirs and distributees was dependent upon, and burdened with, the obligation imposed by their ancestor's contract. Certainly the statute concerning grubstake contracts and prospecting agreements was not designed to displace this rule of property or the statute of descent and distribution, or to enlarge or diminish the principles of equity applicable to the case in hand. Obviously the statute, wrongfully construed and applied by the district court, was ostensibly enacted and adopted to protect bona-fide purchasers. The doctrine of bona-fide purchaser has no application to the case. The case, in our opinion, as made by the pleadings and proof, comes squarely within the exception contained in the statute. It results that it should

have been decided upon general principles of equity, applicable to cases of this nature and character.

The court having decided that the plaintiff had an interest, and what that interest was, in the proceeds of the sale and conveyance of property acquired by defendants as heirs and distributees of Richard Hennessy, deceased, it was its duty to render judgment in favor of plaintiff for the interest so ascertained and adjudged to be justly and rightly his.

Nothing said herein is to be taken or understood as deciding what would be the effect of the statute were the case one between plaintiff and the Hennessy Divide Mining Company, as grantee of the defendants.

This being an equity case, we have carefully reviewed the evidence, and we reach the conclusion that plaintiff is entitled to and should have and recover of the defendants 189,281 shares of the capital stock of said Hennessy Divide Mining Company; and it is ordered that the case be remanded, with directions to the court below to render and to enter its judgment and decree in favor of plaintiff and against the defendants for said number of shares of such stock, and for such other relief as may appear necessary for its delivery to plaintiff.